**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| AMANDA H.,[1] | : | Case No. 2:25-cv-00671 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL | : | District Judge Algenon L. Marbley |
| SECURITY ADMINISTRATION, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| Defendant. | : | |
| | : | |

**REPORT AND RECOMMENDATIONS[2]**

Plaintiff Amanda H. brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).  The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), and the administrative record. (Doc. #7).

**I.     Background**

The Social Security Administration provides DIB and SSI to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a).  The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.
[2] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

"substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff applied for DIB and SSI in May 2022, alleging disability beginning June 1, 2020, due to several impairments, including arthritis in her left knee, chronic pain, bulging discs in lower back, sciatica, "knee gives out," anxiety, depression, headaches, and ADHD. (Doc. #7-6, *PageID* #347).  After Plaintiff's applications were denied, initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Cynthia Harmon on February 20, 2024.  (Doc. #7-2, *PageID* #s 100-38).

Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[3]  She reached the following main conclusions:

| | |
|---|---|
| Step 1: | Plaintiff has not engaged in substantial gainful activity since June 1, 2020, the alleged onset date. |
| Step 2: | She has the following severe impairments: arthritis of the bilateral knees; degenerative disc disease of the lumbar spine; migraine headaches; obesity; major depressive disorder; an anxiety disorder; attention deficit hyperactivity disorder (ADHD); and borderline intellectual functioning. |
| Step 3: | She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. |
| Step 4: | Her residual functional capacity (RFC), or the most she can do, despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 |

---

[3] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

> F.3d 235, 239 (6th Cir. 2002), consists of the ability to perform "light work… except: reducing the ability stand or walk to about 4 hours and can sit about 6 hours in an 8 hour day; can occasionally balance, stoop, and crouch; can never kneel or crawl; can be exposed to no more than moderate noise levels as defined by the DOT; must avoid dangerous work place hazards such as unprotected heights or dangerous moving machinery; is able to understand, remember, and carry out simple instructions that do not involve detailed or complex decision making or judgment; can tolerate occasional changes in a routine work setting; cannot be required to work at a production rate pace, such as assembly line work, or have hourly quota requirements, but would able to complete flexible daily quotas by end of day; and can have occasional interaction with coworkers, supervisors and the general public."
>
> She is unable to perform her past relevant as a fast food worker, home attendant, or cashier.

Step 5:     Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers that Plaintiff can perform in the national economy.

(Doc. #7-2, *PageID* #s 36-67).  Based on these findings, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from June 1, 2020, though the date of the decision, April 1, 2024.  *Id.* at 67-68.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 33-68), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), and Plaintiff's Reply (Doc. #13).  To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II.     <u>Standard of Review</u>

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r*

3

*of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III.    Discussion

In her Statement of Errors, Plaintiff contends that the ALJ failed to assess the supportability and consistency of the prior administrative medical findings of state agency reviewers, Kristin Haskins, Psy.D., and Audrey Todd, Ph.D., as required by 20 C.F.R. § 404.1520(c).  (Doc. #8, *PageID* #s 1225-31). Plaintiff further avers that the ALJ failed to meet the minimum level of articulation necessary to "allow the appellate court to trace the path of [her] reasoning." *Id.* at 1228 (citing *Stacey v. Comm'r of Soc. Sec.*, 451 Fed. App'x 517, 519 (6th Cir. 2011) (internal citations omitted)). The Commissioner argues that the ALJ provided an exceedingly thorough and well supported evaluation of the findings of the state agency psychological consultants. (Doc. #12,

4

*PageID* #s 1240-45). For the reasons that follow, the undersigned recommends the Court affirm the Commissioner's non-disability finding.

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the

claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

These latest regulations "still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

In formulating Plaintiff's mental RFC, ALJ Harmon considered the opinion of state agency psychologist Dr. Haskins, who reviewed Plaintiff's records on January 12, 2023. (Doc. #7-2, *PageID* #s 62-64) (citing Doc. #7-3, *PageID* #s 141-50). Dr. Haskins found Plaintiff had moderate limitations in all Paragraph "B" criteria, including understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (Doc. #7-3, *PageID* #145). Dr. Haskins opined that Plaintiff maintains the ability to understand and remember simple and routine one to three step tasks, can carry out simple and routine one to three step tasks in a work environment that does not have a fast pace and where can work away from the distractions of others, is able to work in a non-public work environment

6

in which interaction with coworkers and supervisors is occasional and superficial, and can adjust to minor changes in the work setting and still complete an ordinary routine consistently on an independent basis; Dr. Haskins further noted that major changes will need to be introduced in advance and then gradually phased in to allow Plaintiff time to adjust to the new expectations. *Id.* at 149-50.

The ALJ also considered the opinion of state agency psychologist Dr. Todd. (Doc. #7-2, *PageID* #s 62-64) (citing Doc. #7-3, *PageID* #s 165-73). Dr. Todd reviewed Plaintiff's file upon reconsideration on April 13, 2023, and adopted Dr. Haskins' findings. (Doc. #7-3, *PageID* #s 168-73).

ALJ Harmon found Dr. Haskins' and Dr. Todd's opinions to be "generally persuasive." (Doc. #7-2, *PageID* #64). The ALJ explained that "[t]heir assessments, which demonstrate [Plaintiff] has moderate limitations from her mental impairments, are generally well supported." *Id.* at 63. The ALJ noted that Dr. Haskins and Dr. Todd "have program knowledge and experience evaluating impairments pursuant to the Social Security Act" and, in particular, "have specialized training and experience in the field of psychology." *Id.* The ALJ concluded that Dr. Haskins' and Dr. Todd's assessments are consistent with the longitudinal treatment record, which shows improvement with relatively conservative treatment. *Id.*

A. Consistency & Supportability

First, Plaintiff argues that the ALJ's consistency analysis is "flawed and incomplete" and that the ALJ did not assess the supportability factor when evaluating Dr. Haskins' and Dr. Todd's opinions, necessitating a remand. (Doc. #8, *PageID* #1227). However, contrary to the Plaintiff's

assertions, ALJ Harmon properly considered the persuasiveness of the opinions of Dr. Haskins and Dr. Todd under the factors of supportability and consistency. (Doc. #7-2, *PageID* #s 62-64). In making her determinations as to supportability and consistency, ALJ Harmon expressly contemplates the consistency factor, finding Dr. Haskins' and Dr. Todd's opinions "generally consistent with the medical evidence of record" and "consistent with the longitudinal treatment record" while also noting specific limitations—namely, "superficial interaction with others"—that are "not consistent with the medical evidence of record and the record as a whole." *Id.* at 62-64. The ALJ more than adequately explained her findings as to consistency, with exhaustive citations to the record. *Id.* at 63 (citing to the record extensively when noting that Plaintiff was alert and oriented; had "average fund of knowledge"; had "logical, linear, and/or goal-oriented thought processes"; had "normal/appropriate moods and/or affects"; and more).

Likewise, ALJ Harmon expressly found Dr. Haskins' and Dr. Todd's assessments "well supported," citing to various exhibits in the record. *Id.* at 63 (citing Ex. 2A; 4A; 6A; and 8A). ALJ Harmon also stated that Dr. Haskins' and Dr. Todd's assessment that the Plaintiff would need to work away from the distraction of others is "not supported by the medical evidence of record and the record as a whole," specifically citing to exhibits that illustrate that Plaintiff "often had [a] grossly intact attention span" and "reported performing activities[,] including shopping and driving." *Id.* at 63. Further, the ALJ noted that, while Dr. Haskins and Dr. Todd "did not have the opportunity to examine the [Plaintiff]," the state agency psychologists "have program knowledge and experience evaluating impairments pursuant to the Social Security Act" and "have specialized training and experience in the field of psychology." *Id.* at 62-63.

As stated above, when evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion; here, ALJ Harmon found both opinions by Dr. Haskins and Dr. Todd "generally persuasive." *Id.* at 64. Thus, although the ALJ did not specifically use the term "supportability," she adequately considered it when assessing Dr. Haskins' and Dr. Todd's opinions. *See Sasha M. v. Comm'r*, No. 2:22-cv-2101, 2023 WL 1793536, at *6 (S.D. Ohio Feb. 7, 2023) (Jolson, M.J.) ("While the ALJ did not use the 'magic words' supportability and consistency, her line of reasoning addressed both.")). Therefore, ALJ Harmon sufficiently considered supportability and consistency.

B. ALJ's Treatment of Superficial Limitation

Next, Plaintiff argues that the ALJ inadequately explained why she declined to include the state agency psychologists' limitation to superficial interaction with coworkers and supervisors. (Doc. #8, *PageID* #s 1226-27). Plaintiff asserts that the ALJ's consistency analysis of the superficial contact limitation lacks "any explanation at all," which "makes it impossible to trace the path of the ALJ's reasoning. *Id.* at 1229. Plaintiff further contends that the ALJ's analysis "does not represent an accurate picture of the entire record," citing evidence showing limited attention and concentration and other deficits, as well the "fluctuating nature" of her condition. *Id.* at 1229-30. However, in addressing Dr. Haskins' and Dr. Todd's assessments "that the [Plaintiff] would require superficial interaction with others," the ALJ found that the limitation was "not consistent with the medical evidence of the record and the record as a whole." (Doc. #7-2, *PageID* #62). The ALJ sufficiently explained her reasoning, explaining that

> [Plaintiff] often appeared pleasant, cooperative, and/or calm (See, e.g., Ex. 2F/29; 3F/80; 4F/17, 23, 31, 42, 46; 6F/16; 7F/7; 8F/16, 19, 31; 9F/12, 17, 35-37, 44-45, 53, 71, 75, 82, 88, 94-99; 10F/18; and 15F/13, 28). She had normal behavior during multiple evaluations (Ex. 1F/10-11; 4F/17, 23, 27, 37, 46; 7F/7; 8F/16; 9F/17, 23, 35; and 10F/24, 30). In her June 2022 function report, she denied having difficulty getting along with authority figures and she reported she had never lost a job due to problems getting along with others (Ex. 7E/6-7). In September 2022, she indicated she had a new boyfriend (Ex. 8F/22). In December 2022, she stated her typical interactions with coworkers and supervisors were generally intact (Ex. 7F/4-5). The State agency assessments that [Plaintiff] has moderate limitation in the ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods is vague, as "unreasonable" is not defined. Additionally, the State agency assessment that [Plaintiff] would need to work away from the distraction of others is not supported by the medical evidence of record and the record as a whole. For example, [Plaintiff] often had grossly intact attention span (See Ex. 4F/17, 23, 43, 46; 8F/8, 16, 22-23, 27; 9F/13, 17, 31, 35, 41-45, 51, 56, 75, 82, 85, 98-99; and 12F/16-17). She has reported performing activities including shopping and driving (Ex. 7E/4).

(Doc. #7-2, *PageID* #s 62-63). Because the ALJ provided "a coherent explanation of her reasoning," *Lester*, 2020 WL 8093313, at *14, that "set forth a 'minimum level of articulation'" in addressing Dr. Haskins' and Dr. Todd's opinions, the ALJ did not err. *Warren*, 2021 WL 860506, at *8. More simply, the ALJ clearly "show[ed] his or her work" and provided a clear and accurate logical bridge. *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-cv-129, 2022 WL 4484603, at *11–12 (S.D. Ohio Sept. 27, 2022) (citing *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 2021 WL 3702170, at *6 (E.D. Mich. 2021)).

10

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability finding be **AFFIRMED**; and

2. The case be terminated on the Court's docket.


June 23, 2026

s/ Peter B. Silvain, Jr.
Peter B. Silvain, Jr.
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).